[Cite as *State v. Smith*, 2011-Ohio-6466.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96348**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## STANLEY SMITH

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED
IN PART, AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-540542

**BEFORE:** Celebrezze, J., Boyle, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** December 15, 2011

**ATTORNEY FOR APPELLANT**

Joseph Vincent Pagano
P.O. Box 16869
Rocky River, Ohio   44116


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:    Andrew J. Santoli
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

**{¶ 1}**   Appellant, Stanley Smith, appeals his convictions for drug possession and drug trafficking.   After careful review of the record and relevant case law, we affirm in part, reverse in part, and remand.

**{¶ 2}**   On February 4, 2010, Detective Alvin Dancy of the Cuyahoga Metropolitan Housing Authority Police Department ("CMHA") received an anonymous tip that appellant "had several warrants and was hiding out at 4613 Louise Harris Drive in the city of Cleveland."   Upon receiving the anonymous tip, Det. Dancy contacted the Cuyahoga County Sheriff's Department and confirmed appellant's outstanding warrants.

{¶ 3} Det. Dancy and several officers responded to the residence where appellant was allegedly hiding. Upon arriving at the residence, Det. Dancy and the officers identified themselves and were let into the residence by Romon Lavant. At that time, Det. Dancy discovered appellant in the residence and placed him under arrest. Det. Dancy testified that appellant was read his Miranda rights and indicated that he understood the extent of his rights. Prior to placing appellant into the patrol car, Det. Dancy conducted a pat down of appellant and located three rocks of crack cocaine in his right front pants pocket. Additionally, Det. Dancy recovered $2,160 from appellant's left front pants pocket. Subsequent forensic analysis conducted by Nicole Allen of the Cuyahoga County Regional Forensic Science Laboratory confirmed that the substance found in appellant's possession was crack cocaine.

{¶ 4} On August 18, 2010, appellant was indicted by the Cuyahoga County Grand Jury in a three-count indictment alleging drug trafficking, in violation of R.C. 2925.03(A)(2), with schoolyard and forfeiture specifications; drug possession, in violation of R.C. 2925.11(A), with schoolyard and forfeiture specifications; and possessing criminal tools, in violation of R.C. 2923.24(A). On January 4, 2011, appellant filed a motion to suppress the evidence obtained during his arrest. On January 24, 2011, the trial court held a suppression hearing, after which appellant's motion to suppress was denied.

{¶ 5} On January 26, 2011, appellant executed a jury trial waiver, and a bench trial commenced. At the conclusion of trial, appellant was found guilty of drug

trafficking and drug possession. He was found not guilty of possession of criminal tools. Additionally, he was found not guilty as to the schoolyard and forfeiture specifications. The trial court found that the drug trafficking and drug possession convictions were allied offenses, and the state elected to pursue sentencing on the drug trafficking conviction. The trial court imposed a six-month sentence and ordered appellant to serve it consecutively to his sentence in an unrelated case.

{¶ 6} Appellant brings this timely appeal, raising five assignments of error:

{¶ 7} "I. The trial court erred in denying appellant's motion to suppress."

{¶ 8} "II. The trial court erred by denying appellant's motion to dismiss or his alternative motion for continuance to obtain information the arresting officer used to prepare the police report."

{¶ 9} "III. The trial court erred by admitting State's Exhibits 1 & 2 because the state did not establish a proper chain of custody."

{¶ 10} "IV. The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions."

{¶ 11} "V. Appellant's convictions are against the manifest weight of the evidence."

**Legal Analysis**

**I**

{¶ 12} In his first assignment of error, appellant argues that the trial court erred in denying his motion to suppress the evidence obtained during the officers' warrantless entry into the residence.

{¶ 13} A motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. * * * Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Internal citations omitted.) Id.

{¶ 14} The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

{¶ 15} The Fourth Amendment protects against unreasonable government intrusions into areas where legitimate expectations of privacy exist. *United States v. Chadwick* (1977), 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538. The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that

"searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions." *Mincey v. Arizona* (1978), 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290; *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576; *South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; and *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. The touchstone of a Fourth Amendment analysis of lawfulness of a search is whether a person has a constitutionally protected reasonable expectation of privacy. *Katz*, supra; *California v. Ciraolo* (1986), 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210.

{¶ 16} Initially, we note that an individual challenging the legality of a search or seizure bears the burden of proving standing. *Rakas v. Illinois* (1978), 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387. The burden is met by establishing that the person had a legitimate expectation of privacy in the area searched. *State v. Steele* (1981), 2 Ohio App. 3d 105, 107, 440 N.E.2d 1353. A legitimate expectation of privacy is one that society is prepared to recognize as reasonable. *Rakas* at 143. Status as an overnight guest is sufficient to show that the person had an expectation of privacy in the home. *Minnesota v. Olson* (1990), 495 U.S. 91, 96-97, 110 S.Ct. 1684, 109 L.Ed.2d 85. Thus, an overnight guest has standing to challenge the legality of a search. *State v. Dennis*, 79 Ohio St.3d 421, 1997-Ohio-372, 683 N.E.2d 1096.

{¶ 17} In the present case, appellant failed to produce any evidence at the suppression hearing that he lived in the residence or was an overnight guest. A trial court cannot be expected to assume that privacy interests exist. *State v. Rodgers* (Apr. 19, 1984), Cuyahoga App. Nos. 47146, 47147, and 47151.

{¶ 18} The record reflects that Det. Dancy was the only witness to testify at the suppression hearing, and his testimony failed to establish appellant's privacy interest in the residence. Since appellant failed to produce any evidence of his privacy interests, he has not met his burden of establishing his right to challenge the lawfulness of the search. See *Steele* at 109.

{¶ 19} Moreover, had appellant established that he had a privacy interest in the residence, the search was still constitutionally valid based upon Romon Lavant's voluntary consent.

{¶ 20} When one's home is to be searched, the warrant requirement embodied in the Fourth Amendment constitutes the most compelling protection against unreasonable governmental intrusions. *Welsh v. Wisconsin* (1984), 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732. Warrants are generally required to search a person's home or his person unless "the exigencies of the situation" make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment. *McDonald v. United States* (1948), 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153. Thus, for a warrantless search to be valid, it must fall within one of the narrow and specifically delineated exceptions to the warrant requirement. *Thompson v. Louisiana* (1985), 469

U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246. One of the established exceptions to the warrant requirement is a search that is conducted with voluntary consent. *State v. Faia* (July 23, 1998), Cuyahoga App. No. 73074, citing *State v. Sneed* (1992), 63 Ohio St.3d 3, 6-7, 584 N.E.2d 1160.

{¶ 21} "A police officer may validly enter and search a home, without a warrant, when the officer has obtained the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a non-present co-occupant. (Internal citations omitted)." *State v. Purser*, Greene App. No. 2006 CA 14, 2007-Ohio-192, ¶12. "Common authority" rests on "mutual use of the property by persons having joint access or control for most purposes." *United States v. Matlock* (1974), 415 U.S. 164, 172, 94 S.Ct. 988, 39 L.Ed.2d 242. The burden of establishing an individual's common authority over the subject premises rests upon the state. Id.

{¶ 22} "Further, if consent is given by a third party who in fact does not have valid authority, the determination of whether to enter must 'be judged against an objective standard: would the facts available to the officer at the moment * * * "warrant a man of reasonable caution in the belief"' that the consenting party had authority over the premises?' *Illinois v. Rodriguez* (1990), 497 U.S. 177, 188, 110 S.Ct. 2793, 111 L.Ed.2d 148, quoting *Terry v. Ohio* (1968), 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889." *State v. Huntington*, Wood App. No. WD-10-007, 2010-Ohio-3922, ¶20.

{¶ 23} During the suppression hearing, Det. Dancy testified that he researched CMHA's leaseholder database and discovered that Rokeda Lavant was the confirmed

leaseholder of the residence at issue. Det. Dancy testified that, upon arriving at the residence, "we walked up to the door, knocked on the door, and it was opened by an individual by the name of Romon Lavant. We identified ourselves. He greeted us and invited us inside." In light of facts available to Det. Dancy at the time he interacted with Mr. Lavant, we find that the reasonable person could believe that Mr. Lavant had authority over the premises to consent to the officers' entry. Accordingly, we conclude that the officers' entrance into the residence was constitutional.

{¶ 24} Appellant's first assignment of error is overruled.

## II

{¶ 25} In his second assignment of error, appellant argues that the trial court erred by denying his motion to dismiss or his alternative motion for continuance to obtain information Det. Dancy used to prepare appellant's police report. Appellant contends that the trial court's failure to grant his motions violated his constitutional rights to due process and a fair trial. A trial court's decision regarding the regulation of discovery will not be reversed on appeal absent an abuse of discretion. *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 57, 295 N.E.2d 659. A trial court abuses its discretion only if its decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶ 26} The United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon requests violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or

bad faith of the prosecution." *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215. Additionally, the Criminal Rules mandate that the prosecutor "shall provide * * * the following items related to the particular case indictment, information, or complaint, and which are material to the preparation of a defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant, within the possession of, or reasonably available to the state, subject to the provisions of this rule: * * * (5) any evidence favorable to the defendant and material either to guilt or punishment." Crim.R. 16(B)(5).

{¶ 27} Favorable evidence under *Brady* includes both exculpatory and impeachment evidence, but the evidence must be both favorable and material before disclosure is required. Id., citing *United States v. Bagley* (1985), 473 U.S. 667, 674, 105 S.Ct. 3375, 87 L.Ed.2d 481. Evidence is material under *Brady* only if there exists a "reasonable probability" that the result of the trial would have been different had the evidence been disclosed to the defense. Id., citing *Kyles v. Whitley* (1995), 514 U.S. 419, 433-434, 115 S.Ct. 1555, 131 L.Ed.2d 490, quoting *Bagley* at 682. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id., citing *State v. Johnston* (1998), 39 Ohio St.3d 48, 529 N.E.2d 898, paragraph five of the syllabus.

{¶ 28} If a party fails to comply with Crim.R. 16 or an order issued under it, "the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make

such other order as it deems just under the circumstances." Crim.R. 16(L)(1), formerly Crim.R. 16(E)(3).

{¶ 29} In the case sub judice, Det. Dancy testified that as common practice, the CMHA radio communication center contemporaneously stores radio updates received from officers in the field as they effectuate an arrest. The information received by the radio communication center is then entered into CMHA's Computer Aided-Dispatch recording system ("dispatch log"). Subsequently, the dispatch log is used by the officer to prepare a police report once he returns to the station.

{¶ 30} Appellant contends that the trial court erred in denying the dismissal of his indictment based on the state's failure to provide him with the dispatch logs during the discovery process. Appellant argues that the information in the dispatch log was discoverable pursuant to Crim.R. 16 because it was used to compile the police report and potentially contained contradictory or exculpatory information. We disagree.

{¶ 31} At trial, Det. Dancy explained that he used the dispatch log to draft his police report and that the information contained in the dispatch log was duplicated in the report. Det. Dancy testified that the remainder of the police report was based on his own personal recollection of the chronological events associated with appellant's arrest. In our view, Det. Dancy's testimony reflects that the information contained in the dispatch log was included in the police report, which was given to appellant at the onset of the discovery process. In light of Det. Dancy's testimony, we are unable to conclude that

the outcome of appellant's trial would have been different had the dispatch logs been disclosed to him.

{¶ 32} Furthermore, the state is only required to disclose information that is within its possession or is readily available to it.   The prosecution stated, "under Criminal Rule 16 and the local rule we are required to provide full and open discovery.   The police report, criminal records, lab report, school map has [sic] all been provided to defense counsel. * * * At no time throughout the pendency of this case has the State intentionally or unintentionally hid any evidence."

{¶ 33} Additionally, the information contained in the dispatch log was not readily available to the state because it is destroyed in the normal course of business.   Appellant had the opportunity to file a subpoena for the dispatch logs prior to the January 26, 2011 trial date and failed to do so.   The trial court did not abuse its discretion in denying appellant's motion to dismiss and motion for continuance as requested under Crim.R. 16(L)(1).

{¶ 34} Appellant's second assignment of error is overruled.

### III

{¶ 35} In his third assignment of error, appellant argues that the trial court erred by admitting evidence where the state failed to establish a proper chain of custody.

{¶ 36} The chain of custody is part of the authentication and identification requirement in Evid.R. 901.   *State v. Brown* (1995), 107 Ohio App.3d 194, 200, 668 N.E.2d 514.   The state bears the burden of establishing a proper chain of custody.   *State*

*v. Moore* (1973), 47 Ohio App.2d 181, 183, 353 N.E.2d 866. However, the state has no duty to eliminate every possibility that tampering or substitution occurred. Id. The state must only show that it is reasonably certain that a substitution, tampering, or alteration did not occur. Id.

{¶ 37} Chain of custody can be established by direct testimony or by inference. *State v. Conley* (1971), 32 Ohio App.2d 54, 60, 288 N.E.2d 296. The issue as to whether there is a break in the chain of custody is a determination left to the jury. *Columbus v. Marks* (1963), 118 Ohio App. 359, 194 N.E.2d 791. Any breaks in the chain of custody go to the weight afforded to the evidence, not to its admissibility. Id. See, also, *State v. Mays* (1996), 108 Ohio App.3d 598, 671 N.E.2d 553.

{¶ 38} At trial, the state submitted the following items into evidence: (1) the drugs recovered from appellant's right front pants pocket, and (2) the lab result confirming the drugs were crack cocaine. The testimony at trial from Det. Dancy and Nicole Allen laid the foundation to establish a proper chain of custody. Therefore, appellant may only challenge the weight of the evidence, which he does in his fifth assignment of error. However, he may not successfully challenge the admissibility of the evidence itself.

{¶ 39} Appellant's third assignment of error is overruled.

## IV

{¶ 40} In his fourth assignment of error, appellant argues that the state failed to present sufficient evidence to sustain his convictions and, therefore, the trial court should have granted his motion for acquittal.

{¶ 41} Under Crim.R. 29(A), a court "shall order the entry of a judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

### A. Drug Trafficking

{¶ 42} Appellant first challenges his drug trafficking conviction. Drug trafficking under R.C. 2925.03(A)(2) provides:

{¶ 43} "No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."

{¶ 44} At trial, the state produced evidence that appellant was in possession of three rocks of crack cocaine. Det. Dancy testified that, based on his training and experience with street level narcotics, he believed the size of the rocks and the amount of

cash found in appellant's possession were indicative of drug trafficking. Furthermore, Det. Dancy testified that appellant demonstrated no signs of drug abuse and had no crack cocaine paraphernalia on his person at the time of his arrest.

{¶ 45} Appellant correctly points out that none of the accouterments associated with drug trafficking were found on him. The crack cocaine found was not individually packaged for resale, and appellant did not possesses packaging materials, scales, or weapons. However, these facts are not dispositive of the issue. This court has held that, "[w]ith respect to the charge of possession of drugs for sale [R.C. 2925.03], an inference may be drawn from the circumstances surrounding the defendant at the time of his arrest and the quantity and character of the narcotics seized at the time." *State v. Conner*, Cuyahoga App. No. 84073, 2005-Ohio-1971, ¶57, citing *State v. Jones* (Dec. 26, 1973), Franklin App. No. 73AP-338.

{¶ 46} In *State v. Bryant* (June 2, 1994), Cuyahoga App. No. 65614, this court found that sufficient evidence of drug trafficking existed based on "the large number of rocks in appellant's possession, large amount of cash on appellant, an unlikely explanation for carrying the cash, that appellant was better dressed than the others, and the behavior of appellant and the other men when they saw the marked police car." Id.

{¶ 47} Similarly, in *State v. Young*, Cuyahoga App. No. 92744, 2010-Ohio-3402, this court affirmed the defendant's conviction for drug trafficking where appellant was located in a high drug area; possessed a large amount of crack cocaine, both cut and uncut; possessed a large sum of money; and had no crack cocaine paraphernalia on his

person at the time of his arrest, suggesting that the drugs he possessed were not for personal use. Id. at ¶18, citing *State v. Batin*, Stark App. No. 2004-CA-00128, 2005-Ohio-36.

{¶ 48} In the case at hand, such reasonable inferences of drug trafficking are not present. In contrast to *Bryant* and *Young*, where Bryant was in possession of approximately 34 rocks of crack cocaine and Young was in possession of 12.29 grams of crack cocaine, appellant was found in possession of three rocks of crack cocaine, weighing less than one gram combined. Furthermore, the record does not indicate that appellant was located in a high drug area, and Det. Dancy testified that the three rocks of crack cocaine were not individually packaged. In our view, the nature of appellant's arrest and the quantity of crack cocaine found in his possession failed to establish an inference of drug trafficking.[1] See *State v. Collins*, Cuyahoga App. No. 95422, 2011-Ohio-4808, ¶27-28 ("Establishing that the person committed a crime is not possible solely using inferences from assumptions about conduct without factual evidence supporting the actual elements of the crime charged. * * * Had the legislature included the phrases 'possession of an amount indicating sale or resale' or 'receiving an

---

[1] Although more adequately addressed in a manifest weight analysis, we note that the trial court accepted the testimony of appellant's mother, Regina Smith, as it related to the $2,160 found in appellant's possession. At trial, Smith testified that she gave appellant $2,300 from her tax refund check on February 1, 2010 so he could hire an attorney for representation in an unrelated matter. Because the trial court is in the best position to weigh the credibility of witnesses, we are unable to weigh the amount of money found on appellant as a factor in our drug trafficking analysis.

amount indicating sale or resale,' the task of meeting the elements of R.C. 2925.03(A)(2) would be simple.").

{¶ 49} In light of the above, we sustain appellant's fourth assignment of error as it relates to the drug trafficking conviction.

## B. Drug Possession

{¶ 50} Appellant was convicted of drug possession under R.C. 2925.11(A), which provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance."

{¶ 51} A person acts "knowingly" when "he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Knowledge is generally not susceptible to direct proof, but must be determined through inferences drawn from the surrounding facts and circumstances. *State v. Green* (Apr. 20, 1988), Hamilton App. No. C-860791.

{¶ 52} "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be actual or constructive. *State v. Haynes* (1971), 25 Ohio St.2d 264, 269-270, 267 N.E.2d 787. Although circumstantial evidence is sufficient to support the element of constructive possession, constructive possession cannot be inferred by a person's mere presence in the vicinity of contraband. See *Jenks*; *State v.*

*Giles* (May 12, 1994), Cuyahoga App. No. 63709. Constructive possession requires some evidence that the person exercised or has the power to exercise dominion or control over the object, even though that object may not be within his immediate physical possession. *State v. Wolery* (1976), 46 Ohio St.2d 316, 332, 348 N.E.2d 351.

**{¶ 53}** As stated, Det. Dancy testified that he discovered three rocks of crack cocaine in appellant's pants pocket after searching appellant for weapons or contraband prior to placing him in the zone car. In light of Det. Dancy's testimony, we find that the state presented sufficient evidence that appellant knowingly possessed crack cocaine.

**{¶ 54}** Appellant's fourth assignment of error is overruled as it relates to the drug possession conviction.

## V.

**{¶ 55}** In his fifth assignment of error, appellant argues that his convictions were against the manifest weight of the evidence. In reviewing a claim challenging the manifest weight of the evidence, "[t]he question to be answered is whether there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Internal quotes and citations omitted.) *State v. Leonard*, 104 Ohio St.3d 54, 81, 2004-Ohio-6235, 818 N.E.2d 229.

{¶ 56} Because we find that the evidence was insufficient as to the drug trafficking conviction, we only consider appellant's manifest weight challenge as it relates to the drug possession conviction.

{¶ 57} After examining the entire record, weighing the evidence and all reasonable inferences, we are unable to conclude that the court clearly lost its way and created a manifest miscarriage of justice in convicting appellant of drug possession. For the reasons discussed under the sufficiency of the evidence analysis, the record demonstrates that appellant knowingly possessed crack cocaine. Although appellant disputes the allegation that he possessed crack cocaine at the time of his arrest, the trier of fact was in the best position to weigh the credibility of the witnesses and was free to rely on the testimony of Det. Dancy. Additionally, based on the testimony of Det. Dancy and Nicole Allen, we are unable to conclude that the evidence in the state's custody was tampered with or altered in any way. Accordingly, the weight of the evidence supported appellant's drug possession conviction.

{¶ 58} Appellant's fifth assignment of error is overruled.

{¶ 59} In conclusion, the trial court's judgment is affirmed as to appellant's conviction for drug possession. Appellant's drug trafficking conviction is reversed and remanded and, upon remand of the case, the conviction shall be vacated and appellant shall be resentenced on the drug possession count because he was originally sentenced on the drug trafficking count.

{¶ 60} This cause is affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

MARY J. BOYLE, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR